**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**STEPHANIE A.[1],**

**Plaintiff,**

**v.**

**KILOLO KIJAKAZI, Acting Commissioner of Social Security,**

**Defendant.**

**Case No. 21-cv-775-SPM**

# MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423 and 20 C.F.R. pt. 404.

## PROCEDURAL HISTORY

Plaintiff initially applied for DIB on October 1, 2014, alleging a disability onset date of September 1, 2014. (Tr. 159-165). On February 15, 2015, following a review of her health problems, the Social Security Administration determined that plaintiff did not qualify for benefits. (Tr. 93-96). On March 3, 2015, plaintiff filed a request for reconsideration. (Tr. 97). On June 15, 2015, the Social Security Administration issued

[1] In keeping with the court's practice, plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

its notice of reconsideration wherein it determined plaintiff did not qualify for disability benefits because her condition was not severe enough to keep her from working. (Tr. 98-102).

On July 28, 2015, plaintiff requested a hearing by an Administrative Law Judge ("ALJ"). (Tr. 103-104). An evidentiary hearing was held on March 17, 2017, and the ALJ denied the application on August 8, 2017 holding that plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act. (Tr. 697-719).

Plaintiff requested review of the ALJ decision; however, the request was denied on June 9, 2018 as the appeals council found no reason to review the ALJ decision. (Tr. 720-725). On July 9, 2018, plaintiff then filed a timely complaint in the U.S. District Court for the Central District of Illinois, to wit: 3:18-cv-3172. (Tr. 726-741). On May 9, 2019, the Central District remanded this case for further administrative proceedings pursuant to sentence 4 of Section 205 of the Social Security Act, 42 U.S.C. § 405(g). (Tr. 771-779). On June 26, 2019, the appeals council remanded this case to the ALJ. (Tr. 780-784).

A second hearing was held on December 23, 2019. (Tr. 667-696). On February 26, 2020, the ALJ issued an unfavorable decision and found that plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act. (Tr. 636-666). On December 8, 2020, the appeals council declined to take jurisdiction and review this matter, making the ALJ's decision the final decision of the Commissioner of Social Security after remand by the Court. (Tr. 620-626).

Plaintiff has exhausted administrative remedies and filed a timely complaint with this Court on July 6, 2021 (Doc. 2).

**ISSUES RAISED BY PLAINTIFF**

Plaintiff filed a *pro se* brief and asserted generally that she was filing this action against the Social Security Administration because "I believe the denial of my social security disability insurance (SSDI) case was incorrect." (Doc. 12). Within her brief, plaintiff set forth ten (10) grounds for her belief that her SSDI case should be overturned or remanded (*Id.*). In short, plaintiff argued that the ALJ discounted the medical evidence and opinions and that the ALJ substituted her personal lay opinions and diagnoses for that of the medical professionals (*Id.*). Plaintiff also alleged that insufficient weight was given to her doctor's opinions (*Id.*).

**APPLICABLE LEGAL STANDARDS**

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to

perform her former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 404.1520.

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability. The claimant bears the burden of proof at steps 1–4. Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

It is important to recognize that the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether Plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v.*

*Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

**THE DECISION OF THE ALJ**

ALJ Katherine Jecklin followed the five-step analytical framework described above and found that plaintiff fulfilled her burden in establishing the first four steps. (Tr. 639-656). At step one, the ALJ determined that plaintiff had not worked at the level of substantial gainful activity since before the alleged onset date of September 1, 2014. (Tr. 642). The ALJ also found that plaintiff was insured for DIB through December 31, 2019. (*Id.*).

At step two, the ALJ found that plaintiff had the following severe impairments: lumbar spine degenerative disc disease/degenerative joint disease, fibromyalgia/chronic fatigue syndrome/chronic pain syndrome, migraines, obesity, depression, dysthymia, adjustment disorder, anxiety, panic disorder, and pain disorder with psychological factors. (Tr. 642).

At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically exceeds the severity of one of the "listed" impairments. (Tr. 643). Before proceeding to step four, the ALJ determined that Smith had the Residual Functional Capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b)[2] with the following limitations:

[2] To determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy. These terms have the same meaning as they have in

> Plaintiff cannot climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs, and can balance, kneel, crouch, and crawl. Plaintiff can have no exposure to hazards, such as unprotected heights or unprotected moving mechanical parts. Plaintiff can perform no driving for work, nor can she have any workplace exposure to extreme heat, extreme cold, or vibration. Thus, the ALJ found that plaintiff was not disabled and that she could work in an environment with no more than a moderate noise level, and could perform work limited to simple, routine, repetitive tasks involving only simple, work-related decisions. Plaintiff can perform no work at a production rate pace, which is work with an assembly line or conveyor belt. Plaintiff can have no contact with the public, occasional interaction with co-workers, and after the initial training period, occasional interaction with supervisors. (Tr. 646-647).

RFC is what an individual can still do despite his or her limitations. SSR 968p; *see also* 20 C.F.R. § 404.1545(a)(1). "The RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." *Id.* "The RFC assessment must be based on *all* of the relevant evidence in the case record ...." SSR 96-8p; *see* 20 C.F.R. § 404.1545(a)(3).

At Step 4, the ALJ found that plaintiff was unable to perform any past relevant work through the date last insured. (Tr. 654). Both the plaintiff herself and the VE testified that she was unable to perform her prior employment as a hospital nurse. (*Id.*). Finally, at step 5, the ALJ found that there are jobs that exist in significant numbers in

---

the Dictionary of Occupational Titles, published by the Department of Labor. In making disability determinations under this subpart, we use the following definitions:

(b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

the national economy that the plaintiff can perform, considering her age, education, work experience, and residual functional capacity. (Tr. 654).

In addition to following the 5-step analytic framework, the ALJ also found that plaintiff was born on July 24, 1971 and was 48 years old on the date last insured, which is defined as a younger individual, aged 18-49. (Tr. 645). Plaintiff has at least a high school education and is able to communicate in English. (*Id.*).

Finally, the ALJ found that transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the plaintiff is "not disabled", whether or not she has transferable job skills. (Tr. 654). The ALJ also found that jobs existed in significant numbers in the national economy that the plaintiff could have performed given her age, education, work experience and RFC. (*Id.*).

## THE EVIDENTIARY RECORD

The Court has reviewed and considered the entire evidentiary record in preparing this Memorandum and Order.

### 1. Agency Forms

Plaintiff's date of birth is July 24, 1971. (Tr. 175). Plaintiff claims she was unable to work as of 9/1/2014 due to the following physical and mental conditions: (1) Arthritis; (2) Chronic back pain; (3) Protruding disc lumbar spine; (4) Reynauds; (5) Eczema; (6) Anxiety; (7) Depression; (8) High blood pressure; (9) Migraines; and, (1) GERD. (Tr. 178). Plaintiff is 5' 4½" tall (Tr. 178, 677). When she initially filled out the forms, she weighed 245 pounds, but was down to 217 at the time of the hearing, which she attributed to not

eating due to depression (*Id.*). Plaintiff subsequently filed another application for disability benefits indicating that she was still disabled (Tr. 895).

**2. Evidentiary Hearing**

Plaintiff was represented by an attorney at the hearing on December 23, 2019. (Tr. 667-696). In her opening statement, plaintiff's counsel stated that plaintiff has a number of physical and mental health issues. She highlighted some of the most severe, including fibromyalgia, chromic low-back pain, migraines, chronic fatigue syndrome, depression, anxiety, panic disorder. She claimed some of the conditions worsened with the medications, like the fatigue and those type of things. (Tr. 670).

Plaintiff testified that her biggest issues were physical, but she had some mental health issues too. (Tr. 674). She claimed the fibromyalgia was an all-day, every-day thing that hit in different areas and caused pain and fatigue and memory issues. Some days she has spasms in her back, legs, and/or shoulders, and other days she has nerve pain and can hardly wear a shirt because she feels like she has a sunburn. (Tr. 675-676). Rest is the best medicine, but she does take medications (gabapentin, cyclobenzaprine) that decrease the pain and make her drowsy or fall asleep. (*Id.*). Fatigue, especially with fibromyalgia and depression, hits plaintiff all the time. (Tr. 677). Plaintiff sleeps about 14 hours a night and is lying in bed at least 18 to 20 hours in her bedroom (*Id.*).

Plaintiff also has low-back pain and some knee arthritis that affects her when walking, standing, and sitting for more than 20 minutes. (Tr. 678, 681). She claims she cannot watch an hour TV show without having to get up and move around. (*Id.*).

Her pain level is constantly a 3 or 4 but moving really tightens up her back. (*Id.*). She cannot lift more than a milk gallon. (*Id.*). She has no plans for surgery. (*Id.*).

Plaintiff estimated she suffers from six (6) migraines a month. (*Id.*). She takes medication twice a day. (*Id.*). Her triggers are lack of sleep and stress. (Tr. 680). Lack of sleep is not usually a problem unless she has a bout of insomnia. (*Id.*). The migraines can last six (6) hours to three (3) days. (*Id.*). With respect to her mental health, plaintiff has anxiety, nervousness, and trouble concentrating and making decisions. (Tr. 682-683). She meets with her psychiatrist regularly. (Tr. 683).

Plaintiff resides with her husband, their 18 and 20 year old sons, and their 13 year old daughter (Tr. 683-684). Plaintiff's husband is a disabled veteran with asthma and COPD (Tr. 684). She does not have to help him because the boys stay home and help (Tr. 684-685).

A VE testified that an individual that required redirection about six (6) times per day would require an accommodation. (Tr. 695).

**3. Relevant Medical Records**

The Court finds that the medical records summary in the ALJ's decision, when compared to the points raised by Plaintiff, is sufficiently comprehensive.

**4. State Agency Consultants' Opinions**

Two state agency consultants assessed plaintiff's RFC based on a review of the record, in February 2015 and June 2015. Additionally, two psychologists also conducted mental residual functional capacity assessments. The ALJ gave significant weight to these findings (Tr. 652).

Following plaintiff's initial application for DIB, Dr. Lenore Gonzalez, M.D., and Dr. Howard Tin, Psy.D., determined that plaintiff was capable of unskilled work and simple tasks that did not require interaction with the general public (Tr. 64-76). Specifically, plaintiff was deemed "Not Disabled" following the assessment. (Tr. 76).

Plaintiff's DIB application was reconsidered by Dr. Richard Bilinsky, M.D. and Dr. Erika Gilyot-Montgomery. (Tr. 79-91). Again, both professionals deemed that plaintiff was "Not Disabled". (Tr. 90).

**5. Evaluations**

On January 29, 2015, a psychological evaluation was conducted by Dr. Stephen G. Vincent, Licensed Clinical Psychologist, to assess plaintiff's mental status. (Tr. 403-405). In his report, Dr. Vincent opined that plaintiff's diagnosis was adjustment disorder with mild to moderate anxiety and depression. (Tr. 405). In summary, Dr. Vincent concluded that plaintiff has "a history of anxiety with p.r.n. use of Xanax, averaging twice per month, for episodes of anxiety due to worries and concerns about her overall medical well-being … complaining of chronic low back pain … Raynaud's syndrome … hypertension, and migraine headaches … no history of any formal psychological and/or psychiatric interventions in the past year and currently is not involved in counseling efforts … denies any disturbances in regards to quality, form, or content of thought … [c]ognitively she is intact … [s]he is not psychotic, nor is she suicidal. (*Id.*).

On November 6, 2018, plaintiff underwent a subsequent psychological exam with Dr. Dolores S. Trello, Licensed Clinical Psychologist, to assess her mental health for

Social Security Disability purposes. (Tr. 1079-1085). At that time, Dr. Trello concluded that plaintiff suffered from a persistent depressive disorder, dysthymia, a generalized anxiety disorder as well as panic disorders. (Tr. 1082). Accordingly, Dr. Trello indicated the following diagnostic impressions: (1) Persistent depressive disorder, dysthymia; (2) Generalized anxiety disorder; (3) Panic Disorder; and, (4) Agoraphobia. (Tr. 1081). In closing, Dr. Trello noted that plaintiff did well enough on her mental status examination and seemed capable of handling her funds in her own best interest. (*Id.*).

On November 2, 2018, plaintiff underwent a medical evaluation by Dr. Vittal V. Chapa, M.D., to assist in her disability determination. (Tr. 1071-7078). Following a review of her medical complaints and physical examination, Dr. Chapa indicated the following diagnostic impressions: (1) History of fibromyalgia; and, (2) Multiple musculoskeletal pains. (Tr. 1073). In summary, Dr. Chapa noted that plaintiff "complains of pain in the back, neck and both knees and shoulders … full range of motion of the joints … complains of fibromyalgia and fatigue … no specific trigger points … diffuse tenderness on palpation … no evidence of radiculopathy." (*Id.*).

## ANALYSIS

The ALJ reasonably determined that the record supported a conclusion that plaintiff was not disabled and was capable of performing light work as of her date last insured.

In her brief, plaintiff states, "I believe the dismissal of medical experts' documentation and erroneously classifying conditions as non-severe are the major issues concerning this case" (Doc. 12, p. 5). Plaintiff here seems to have pulled from the

record almost every bit of medical evidence that was not mentioned by the ALJ, but she fails to demonstrate that the failure to mention the evidence she cites undermines the ALJ's conclusion. It appears as if plaintiff is contesting Step 2 of the sequential analysis as well as the ALJ's RFC assessment; however, both of these arguments fail.

An ALJ is, of course, not required to address every piece of evidence in the record. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010); *Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009). At the same time, the ALJ cannot highlight only the evidence that supports his conclusion while ignoring contrary evidence that supports Plaintiff's application. *Moore v. Colvin*, 743 F.3d 1118, 1124 (7th Cir. 2014). Rather, the ALJ must consider all relevant evidence in the case record and evaluate the record fairly. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003); 20 C.F.R. § 404.1545 (a)(1) and (3). Indeed, even though an ALJ need not mention every snippet of evidence in the record, the ALJ must connect the evidence to the conclusion. *Denton v. Astrue,* 596 F.3d 419, 425 (7th Cir.2010); *Simila v. Astrue,* 573 F.3d 503, 516 (7th Cir.2009); *Zurawski v. Halter,* 245 F.3d 881, 888–89 (7th Cir.2001). An ALJ must also analyze a claimant's impairments in combination. *Terry v. Astrue,* 580 F.3d 471, 477 (7th Cir.2009).

In support of her position, plaintiff provides irrelevant information, including definitions of agoraphobia and depression as well as numerous other documents which she concedes are not Social Security papers. (Doc. 12, p. 5). Plaintiff numbers her alleged reasons for review. Plaintiff also asserts that the ALJ substituted her lay opinions and gave insufficient weight to her medical doctor's opinions. (Doc. 12, p. 45). Plaintiff's arguments are little more than an invitation for this Court to reweigh the evidence. She has

not identified any error requiring remand. Even if reasonable minds could differ as to whether Plaintiff was disabled at the relevant time, the ALJ's decision must be affirmed if it is supported by substantial evidence, and the Court cannot substitute its judgment for that of the ALJ in reviewing for substantial evidence. *Burmester,* 920 F.3d at 510; *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).

Although not all of the points raised by plaintiff are relevant to the five-step sequential analysis, the Court will attempt to explain its rationale for affirming the ALJ's decision.

In her first point, plaintiff disputes the ALJ's decision regarding lack of medical evidence to support findings of osteoarthritis in her knees (Doc. 12, p. 1). Although the medical records reference an MRI in June of 2017; the diagnostic impression is not present in the record. Medical records that were not before the ALJ cannot be considered by this Court in determining whether the ALJ's decision was supported by substantial evidence. *Steven D.A. v. Commissioner of Social Security,* 2018 WL 3438856 (S.D. Ill. July 17, 2018) citing *Luna v. Shalala*, 22 F3d 687, 689 (7th Cir. 1994). See also, *Getch v. Astrue*, 539 F.3d 473, 484 (7th Cir. 2008); *Rice v. Barnhart*, 384 F.3d 363, 366, n. 2 (7th Cir. 2004).

In her second point, plaintiff contests the ALJ's determination that agoraphobia was not a medically determined impairment (Doc. 12, p. 2). With respect to mental conditions, it is important to note that the ALJ did find that "depression, dysthymia, adjustment disorder, anxiety and panic disorder" were medically determinable severe impairments. (Tr. 642). Additionally, plaintiff testified as to her mental conditions and

limitations. (Tr. 688-689). The failure to designate agoraphobia as a severe impairment was harmless, as numerous other impairments were designated severe. Regarding step 2, "[a]s long as the ALJ determines that the claimant has one severe impairment, the ALJ will proceed to the remaining steps of the evaluation process.... Therefore, the step two determination of severity is 'merely a threshold requirement.' " *Castile v. Astrue,* 617 F.3d 923, 926–27 (7th Cir.2010) (citation omitted; quoting *Hickman v. Apfel,* 187 F.3d 683, 688 (7th Cir.1999)). In this case, the ALJ went on to consider all of plaintiff's impairments, medical and psychological, before determining that none met or medically equaled the severity of one listed impairment. (Tr. 643). Furthermore, the ALJ specifically found "the panic disorder is a severe impairment accommodated in the residual functional capacity." (Tr. 643).

In her third point, plaintiff takes umbrage with the ALJ position regarding lumbar degenerative joint disease and pointed out that Dr. Hui listed lumbar issues on her Illinois Application for Handicapped Placard; however, that is comparing apples and oranges. The ALJ is concerned with whether plaintiff is disabled under sections 216(i) and 223(d) of the Social Security Act. (Tr. 640). A claimant, however, is **not** entitled to **disability** benefits simply because a physician finds that the claimant is "**disabled**" or "unable to work." Under the Social Security regulations, the Commissioner is charged with determining the ultimate issue of **disability**. See 20 C.F.R. § 404.1527(e).

In plaintiff's fourth point, she contests the ALJs finding of "no evidence of a severe disease", even though the ALJ determined that the fibromyalgia/chronic fatigue syndrome/chronic pain syndrome was a severe impairment (Doc. 12, p. 3) (Tr. 642). In

accordance with Social Security Ruling ("SSR") 12-2p, fibromyalgia can be the basis for a finding of disability when it is established by medical evidence. Indeed, a medically determinable impairment (MDI) of fibromyalgia can only be established by an acceptable medical source (a licensed physician) that reviews the medical chart and history and conducts a physical exam; the SSA cannot rely upon the diagnosis alone. The ALJ even cited to SSR 12-2p when finding that plaintiff failed to establish the medically determinable impairment of fibromyalgia. (Tr. 644). Additionally, the ALJ noted that although various trigger points were demonstrated, plaintiff's diagnosis of fibromyalgia was based on her signs and symptoms, notwithstanding consistently unremarkable physical examinations that show intact strength and normal gait. (Tr. 649).

Plaintiff also contested the ALJ's decision regarding her migraine headaches, but again, the ALJ is bound by SSR 19-4p, which sets forth the guidance for assessing primary headache disorders (Doc. 12, p. 3).. The ALJ did consider the medical evidence of plaintiff's subjective complaints and did consider plaintiff's medications in determining that the migraine headaches did not medically equal the criteria or severity of any specific listing, alone or in combination with any other medically determinable impairment. (Tr. 644). Thus, the ALJ properly considered the (absence) of observation in her decision.

Plaintiff's sixth point focuses on her mental impairments (Doc. 12, p. 3). Specifically, she contests the ALJ's finding that there is no medically documented history of chronic disorder of at least two years' time. However, the ALJ appropriately

considered the listing criteria under both 12.04 (affective disorder/depression) and 12.06 (anxiety related disorder), and determined that plaintiff's mental impairments did not result in one extreme limitation, i.e. the ability to function independently, appropriately, or effectively on a sustained basis, or two marked limitations. Indeed, plaintiff testified to her daily living, which the ALJ found as moderate and mild (Tr. 644-646).

As her seventh point, plaintiff argues that the ALJ improperly determined that she was improving on her medications and did not address the side effects of certain medications (Doc. 12, p. 4). The ALJ did note the "treatment notes document symptom improvement and stabilization" … "conservative care … without significant change or worsening in overall functioning, without a consistent need of stronger medication or other modalities." (Tr. 651). Furthermore, an ALJ has no duty to make specific findings concerning the side effects of a claimant's medication. *Labonne v. Astrue,* 341 Fed.Appx. 220, 226 (7th Cir.2009) (noting that "an ALJ is not required to provide a complete written evaluation of each piece of evidence, including the side effects of the medication" (internal citations omitted)); *Nelson v. Sec'y of Health & Human Servs.,* 770 F.2d 682, 685 (7th Cir.1985) (an ALJ does not have a duty to make specific findings concerning the side effects of prescription drugs).

In plaintiff's eighth point of contention, she questions the ALJ's mention of the drug Gabapentin in her decision; however, in the hearing, the ALJ inquired about Gabapentin, and plaintiff responded "… it does decrease the pain" … it's much more unbearable if I do not take it." (Tr. 676). Plaintiff did not advise the ALJ that she was not taking Gabapentin or correct her during her testimony.

Plaintiff next takes umbrage with the ALJ finding "no causal nexus between work stoppage and the alleged onset date." (Doc. 12, p. 4). Plaintiff last worked in February 2014 and per her application for DIB, the date of onset is September 1, 2014. (Tr. 159-165). While it is true that there was a gap between plaintiff's last date employed and the date of onset; plaintiff is correct that it is irrelevant to the determination in this case because she was insured until December 31, 2019. To be entitled to DIB, the claimant has to establish that his disability arose while he was insured for benefits. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 348 (7th Cir. 2005) *see* 42 U.S.C. § 423(a)(1)(A), (c)(1). Nevertheless, this does not change the outcome.

Plaintiff's last numbered issue concerned Dr. Magrowski, the vocational expert for the hearing (Doc. 12, p. 4). Specifically, plaintiff contests the lack of response from ALJ regarding his statement about missing 2 or more days of work. However, plaintiff was represented at the hearing, and her attorney asked questions of the VE. The ALJ posed questions and hypotheticals which incorporated all of plaintiff's RFC limitations. If she wanted clarification of the VE's testimony, she had amply opportunity to cross-examine him further at the hearing. *See Barrett v. Barnhart,* 355 F.3d 1065, 1067 (7th Cir. 2004) (if a claimant's attorney does not question the basis of the VE's testimony, any objection is forfeited).

In closing, the ALJ's assessment of plaintiff's RFC was supported by the opinion of four state agency consultants. It is proper for an ALJ to rely upon the assessment of a state agency consultant. *Schmidt v. Barnhart,* 395 F.3d 737, 745 (7th Cir. 2005); *Cass v. Shalala,* 8 F.3d 552, 555 (7th Cir. 1993). "State agency medical and psychological

consultants are highly qualified physicians and psychologists who are experts in the evaluation of medical issues in disability claims under the Act." SSR 96-6p, 1996 WL 374180 at *2.

The ALJ reasonably concluded that the record supported a conclusion that plaintiff was "not disabled" on the date last insured. The ALJ weighed the evidence and concluded that the record did not support a determination that Smith could not work. Ultimately, it was Smith's burden, not the ALJ's, to prove that she was disabled. *Summers v. Berryhill,* 864 F.3d 523, 527 (7th Cir. 2017).

## CONCLUSION

After careful review of the record as a whole, the Court is convinced that the ALJ committed no errors of law, and that her findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying Plaintiff's application for disability benefits is **AFFIRMED**.

The Clerk of Court is directed to enter judgment in favor of defendant.

**IT IS SO ORDERED.**

**DATED: April 19, 2022**

/s/ Stephen P. McGlynn

**STEPHEN P. McGLYNN**
**U.S. District Judge**